**IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg**

**RAY COOK,**

Petitioner,

v.                                                          **Civil Action No. 3:22-CV-194**
                                                              Judge Bailey

**DONALD F. AMES,** Superintendent,
Mount Olive Correctional Complex**,**

Respondent,

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

On November 23, 2022, the *pro se* petitioner, Ray Cook ("petitioner") filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. [Doc. 1].   On April 7, 2023, respondent filed a Motion to Dismiss and for Summary Judgment.   [Doc. 29].   On May 5, 2023, petitioner filed a response to the Motion. [Doc. 32].  On May 19, 2023, respondent filed a reply.  [Doc. 33].  The Motion is now fully briefed and ripe for decision.   Petitioner is a state prisoner at Mount Olive Correctional Complex in Mount Olive, West Virginia, and is challenging his conviction in the Circuit Court of Jefferson County, West Virginia.   The matter is now pending before the undersigned for a review and Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.  For the reasons that follow, the undersigned recommends the petition be denied and dismissed.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A. Petitioner's Conviction and Sentence in Jefferson County Circuit Court Case Number 11-F-88

On September 20, 2011, petitioner was indicted for first degree murder and brandishing a firearm in the Circuit Court of Jefferson County in case number 11-F-88. *See* [Doc. 29-1 at 1].  The Supreme Court of Appeals of West Virginia summarized the details of petitioner's criminal case:

> On the afternoon of July 15, 2011, Mr. Ray Cook, the defendant, met his estranged girlfriend, Jenny Perrine, in the parking lot of the Southern States Store in Ranson, West Virginia. Jenny Perrine had told friends she was meeting Mr. Cook to take possession of two pet dogs that had been in his care. Mr. Cook did not bring the dogs with him to meet Ms. Perrine. Instead, Mr. Cook shot Ms. Perrine multiple times and killed her while she sat in her car in the Southern States parking lot. Following the shooting, which had been witnessed by several people, Mr. Cook called 911 and reported that he had shot Ms. Perrine and that he had not taken his medication that day.

> Mr. Cook was indicted on one count of murder in the first degree and one count of brandishing a firearm. A bifurcated jury trial followed. During the guilt phase, Mr. Cook did not deny shooting Ms. Perrine, but instead presented a diminished capacity defense. He claimed his Bipolar Disorder and side effects of medication he was taking rendered him incapable of forming the necessary intent of premeditation and deliberation to commit first degree murder. The jury returned a verdict of guilty on both counts. The same jury decided the mercy phase and recommended no mercy. The circuit court subsequently sentenced Mr. Cook to life without mercy for his conviction of murder in the first degree, and one year in the Eastern Regional jail for his conviction of brandishing. The two sentences were ordered to be served consecutively. It is from this order that Mr. Cook appeals.

*State v. Cook*, No. 12-0836, 2014 WL 620478, at *1 (W.Va. Feb. 12, 2014).

### B. Petitioner's Direct Appeal

Petitioner appealed his conviction and sentence to the West Virginia Supreme Court.  On appeal, petitioner argued for several errors based on the circuit court's failure

to suppress several pieces of evidence, that he was entitled to a new trial due to alleged violations of **Brady v. Maryland**, 373 U.S. 83 (1963) related to the State's failure to disclose the existence of Ativan pills in the victim's purse, that the court erred by not granting a mistrial after the state published to the jury petitioner's invocation of his right to counsel and because of a reference made by expert witness Dr. Clayman to petitioner's incarceration, and finally that the circuit court erred by allowing the State to present evidence in the mercy phase of the trial.  **State v. Cook**, No. 12-0836, 2014 WL 620478, at *1–6 (W.Va. Feb. 12, 2014).  The Supreme Court affirmed the order of conviction and sentence.  *Id* at *6.

## C. Petitioner's State Habeas Corpus Petition in Civil Action No. 14-C-299

On July 1, 2014, petitioner filed a petition for writ of habeas corpus in the Circuit Court of Jefferson County.  *See* [Docs. 29-7 & 29-8].  As summarized by the Supreme Court of Appeals of West Virginia:

> The circuit court held an omnibus hearing on January 21 and January 23, 2020, during which petitioner testified. According to the circuit court's lengthy September 11, 2020, order denying petitioner's habeas petition, petitioner's testimony "was contradicted by competent evidence in numerous different ways[. T]he [c]ourt finds [petitioner's] testimony to be incredible and contradicted by other evidence." In that order, the circuit court engaged in a lengthy review of petitioner's testimony and the evidence presented throughout the trial, in addition to trial counsels' assistance. The court ultimately concluded, in relevant part, that petitioner's trial counsel was not ineffective; any due process argument related to alleged jury tampering that was inferentially raised in the petition is denied; a new PTSD diagnosis is not newly discovered evidence and is not cause to grant petitioner's habeas petition; and petitioner failed to meet his burden to show that he was not competent so mental capacity at the time of trial is not a ground to grant the habeas petition.

**Cook v. Pszczolkowski**, No. 20-0802, 2022 WL 972259, at *2 (W. Va. Mar. 31, 2022) (footnote omitted).

### D.  Petitioner's Habeas Appeal in 20-0802

Petitioner appealed the order denying his habeas petition to the Supreme Court of Appeals of West Virginia.  On appeal, petitioner argued, first, that he was entitled to a new guilt phase of trial based on newly discovered evidence that petitioner suffered from post-traumatic stress disorder ("PTSD"), which could have supported his defense of diminished capacity.  Second, that he was entitled to a new guilt phase of trial based on ineffective assistance of counsel.  Regarding the alleged ineffective assistance, petitioner contended that trial counsel failed to investigate a change in petitioner's demeanor, failed to submit evidence of petitioner shooting animals and his "loss of aim" at the time of the crime, failed to move for a mistrial at several points, failed to obtain footage of an alleged call petitioner made to a suicide hotline, and failed to meet frequently enough with petitioner.  Third, petitioner argued he was entitled to a new mercy phase of trial based on ineffective assistance of counsel.  Petitioner argued that counsel was ineffective by not procuring letters from character witnesses prior to trial.

First, as to the evidence of PTSD, the West Virginia Supreme Court found that a variety of mental health opinions were presented at trial by both sides, and that "yet another expert opinion would be cumulative evidence, which does not entitle petitioner to a new trial." *Cook v. Pszczolkowski*, No. 20-0802, 2022 WL 972259, at *6 (W. Va. Mar. 31, 2022).

Second, as to the claim that petitioner was entitled to a new guilt phase of trial based on trial counsel's ineffectiveness, the Court found that petitioner was unable to show that counsel had made errors or alleged that but for counsel's errors the jury would have reached a different result.  *Id*.

4

Finally, in regard to the mercy phase of trial, the West Virginia Supreme Court agreed with the circuit court's determination that the decision not to call witnesses during the mercy phase of trial was a strategic decision, citing trial counsel's concerns that calling witnesses might "highlight to jurors that petitioner did not testify or express remorse to the jury." *Id*.  The Court affirmed the denial of a petition for writ of habeas corpus on March 31, 2022.

### E.  Federal Habeas Petition

On November 23, 2022, petitioner initiated this case by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  [Doc. 1].  The petition raises five grounds challenging the constitutionality of petitioner's conviction and sentence.  First, petitioner asserts that the prosecution violated ***Brady v. Maryland***, 373 U.S. 83 (1963) by withholding evidence of a key chain pill-container which held Ativan pills.  [Doc. 1-1 at 2].  Second, that his constitutional rights were violated when the trial court admitted into evidence statements made by petitioner to the police after he had invoked his right to counsel pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966).  [Id. at 3].  Third, petitioner contends that the trial court erred in admitting testimony from Dr. Clayman despite Dr. Clayman's failure to record the entire interview with petitioner.  [Id. at 3].  Fourth, that he received ineffective assistance of counsel.  Petitioner claims that trial counsel was ineffective by not eliciting testimony regarding the victim medicating petitioner with Ativan, by failing to "adequately" present evidence of petitioner's bipolar disorder, and by failing to call any character witnesses in the mercy phase of the trial.  [Id. at 4].  Fifth, petitioner argues that his sentence was constitutionally disproportionate and because there is newly discovered evidence that he was suffering from PTSD at the time

of the murder, he is entitled to a new mercy phase of trial "and potentially even the guilt phases (sic) of Petitioner's bifurcated trial."  [Id. at 7].

On January 11, 2023, this Court entered an order directing the respondent to file an answer.  [Doc. 16].

### F.  Respondent's Motion to Dismiss and for Summary Judgment

On April 7, 2023, respondent filed a Motion to Dismiss and for Summary Judgment. [Doc. 29].  First, respondent argues that petitioner cannot show that the evidence of the Ativan bottle was material; respondent points out that petitioner was permitted to reopen his case-in-chief and admit the evidence once it was disclosed that the container did contain Ativan.  [Doc. 30 at 8–9].  Second, regarding a transcript shown to the jury which included "talk to a lawyer," respondent notes that the Supreme Court of Appeals of West Virginia found that the trial court did not abuse its discretion in denying a mistrial, and that petitioner has failed to demonstrate how the West Virginia Supreme Court's decision is contrary to or the result of a misapplication of federal law. [Id. at 9–12].  Third, respondent points out that the West Virginia Supreme Court found that the State did not attempt to admit any statements made by petitioner during the unrecorded portions of the interview with Dr. Clayman; respondent argues that this ground should thus be dismissed.  [Id. at 12–13].  Fourth, respondent argues that for each of the alleged bases for ineffective assistance of counsel, petitioner has failed to meet the two-pronged test under ***Strickland v. Washington***, 466 U.S. 668 (1984) to show that his counsel's representation fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance.  [Id. at 13–20].  Finally, respondent argues that petitioner's fifth ground is procedurally defaulted.

On May 5, 2023, petitioner filed a response to the Motion to Dismiss and for Summary Judgment.  [Doc. 32].  Petitioner states that he has no objection to summary judgment as to Grounds One, Two, and Three of his petition.  [Id. at 2].  Petitioner opposes summary judgment on the ineffective assistance ground, claiming he was prejudiced by the ineffective assistance because he received the maximum statutory sentence.  [Id. at 2–4].  Finally, petitioner argues that at the time his state habeas petition was filed, his counsel had no knowledge of petitioner's as-of-yet diagnosed PTSD.  [Id. at 4–5].

On May 19, 2023, respondent filed a reply to petitioner's response.  [Doc. 33].

## III.    LEGAL STANDARDS

### A. Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Under 28 U.S.C. § 2254, a district court must entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also **Williams v. Taylor***, 529 U.S. 362 (2000).

A petitioner can only seek § 2254 relief if he has exhausted the remedies available in state court, the corrective process is not available in state court, or the state process is ineffective to protect the petitioner. 28 U.S.C. § 2254(b).

## B.  Motions to Dismiss

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (emphasis added).  *See also* *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995).  In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id*. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible."  Id. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion."  *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012).  "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir.

8

2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint.  *Id*. at 396–97.

### C. Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

### IV.    ANALYSIS

The privilege of the writ of habeas corpus is recognized in Article I, Section 9 the United States Constitution. Petitions for writs of habeas corpus filed in the federal courts are governed by 28 U.S.C. § 2241 *et seq*. Pursuant to 28 U.S.C. § 2254(b)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (i) there is an absence of available State corrective process; or
> >     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

In *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), the Supreme Court held that to, "provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." Accordingly, a petition for writ of habeas corpus on behalf of a prisoner in State custody should not be entertained by a federal court unless the petitioner has first exhausted his state remedies. Principles of comity dictate that the state must first be afforded a full and fair opportunity to pass upon and correct the alleged violation of its prisoners' federal rights. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Woodfolk v. Maynard*, 857 F.3d 531 (4th Cir. 2017).

As the Supreme Court recognized in ***Castille v. Peoples***, 489 U.S. 346, 349 *reh'g*

*denied*, 490 U.S. 1076 (1989), practical considerations also necessitate exhaustion of

State court claims prior to federal review:

> The exhaustion requirement, first enunciated in ***Ex parte Royall***, 117 U.S.
> 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), is grounded in principles of comity
> and reflects a desire to "protect the state courts' role in the enforcement of
> federal law," ***Rose v. Lundy***, *supra*, 455 U.S., at 518, 102 S.Ct., at 1203.
> In addition, the requirement is based upon a pragmatic recognition that
> "federal claims that have been fully exhausted in state courts will more often
> be accompanied by a complete factual record to aid the federal courts in
> their review." 455 U.S., at 519, 102 S.Ct., at 1203-1204.

To exhaust available state remedies, a habeas petitioner must fairly present the

substance of his claim to the state's highest court. The Supreme Court explained in

***Duncan***, 513 U.S. at 365, "[i]f state courts are to be given the opportunity to correct

alleged violations of prisoners' federal rights, they must surely be alerted to the fact that

the prisoners are asserting claims under the United States Constitution."

In ***Baldwin v. Reese***, 541 U.S. at 32 (2004), the Supreme Court further explained

the requirements of such fair presentment:

> We [ ] hold that ordinarily a state prisoner does not "fairly present" a claim
> to a state court if that court must read beyond a petition or a brief (or a
> similar document) that does not alert it to the presence of a federal claim in
> order to find material, such as a lower court opinion in the case, that does
> so.

The Court opined that, "[a] litigant wishing to raise a federal issue can easily indicate the

federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction

with the claim the federal source of law on which he relies or a case deciding such a claim

on federal grounds, or by simply labeling the claim 'federal.'" ***Id***. *See also* ***Howell v.***

***Mississippi***, 543 U.S. 440, 444 (2005) (dismissing the writ of certiorari as improvidently

granted because the federal constitutional claim was not fairly presented to the State's highest court for purposes of 28 U.S.C. § 1257).

In West Virginia, the exhaustion of State remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding in the state circuit court of conviction followed by an appeal to the West Virginia Supreme Court of Appeals. *See* ***Moore v. Kirby***, 879 F. Supp. 592, 593 (S.D. W.Va. 1995); *see also* ***Bayerle v. Godwin***, 825 F. Supp. 113, 114 (N.D. W.Va. 1993) (Maxwell, J.) ("A Petitioner challenging a state criminal conviction by a federal habeas corpus action in West Virginia can satisfy the exhaustion requirement by filing a petition for writ of habeas corpus ad subjiciendum in an appropriate state circuit court and, if unsuccessful there, by appealing the denial of the writ to the state Supreme Court.").  A federal court may only consider those issues the petitioner presented to the State court, and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).  As the Supreme Court explained in ***Picard v. Connor***, 404 U.S. 270, 275 (1971), "We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" (Internal citation omitted).

"The burden of proving that a claim is exhausted lies with the habeas petitioner." ***Breard v. Pruett***, 134 F.3d 615, 619 (4th Cir. 1998), *cert. denied*, 523 U.S. 371 (1998). The Fourth Circuit also found in ***Breard*** that, "[t]he exhaustion requirement is not satisfied

if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." *Id*.

**A. Petitioner concedes Grounds One, Two, and Three.**

In petitioner's response to the Motion to Dismiss and for Summary Judgment, [Doc. 32], styled as "Petitioner's Objection to Summary Judgment," petitioner states for each of grounds one, two, and three, "Petitioner has no objection to summary judgment as to this claim." [Doc. 32 at 2]. "The failure to respond to arguments raised in a motion for summary judgment can indicate that the non-moving party concedes the point or abandons the claim." *Blankenship v. Necco, LLC*, No. 2:16-CV-12082, 2018 WL 3581092, at *9 (S.D. W.Va. July 25, 2018) (Copenhaver, J.), *aff'd*, 780 F. App'x 32 (4th Cir. 2019). Here, plaintiff has conceded that summary judgment is appropriate on grounds one, two, and three, and in light of this concession, the undersigned recommends they be dismissed with prejudice.

**B. Petitioner's Fourth Ground, ineffective assistance of counsel, should be dismissed because petitioner cannot meet both prongs of *Strickland*.**

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he was prejudiced by counsel's alleged deficient performance. *Strickland*, 466 U.S. at 669.

The first *Strickland* prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010)

13

(quoting *Strickland*, 466 U.S. at 688).  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced."  *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir.1991).  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 562 U.S. 86 (2011).

The second prong of *Strickland* requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial.  *Strickland*, 466 U.S. at 687.  In essence, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other.

Finally, in reviewing ineffective assistance claims in the context of 28 U.S.C. § 2254, the Court must give deference to the state court's findings.  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Here, petitioner points to three specific failures of his trial counsel.  First, that his counsel failed to conduct an investigation into mitigation related to the decedent providing petitioner with Ativan "which he had a known adverse reaction to."  [Doc. 1-1 at 4]. Second, that counsel failed to "adequately present the fact that Petitioner's 'bipolar' disorder was service connected."  [Id.].  Third, that counsel was ineffective by not calling any character witness during the mercy phase of trial.  [Id.].

Turning to the first alleged failure, the undersigned finds that petitioner is unable to meet either prong of *Strickland*.  As to the first prong, petitioner has not identified any witness who could have verified petitioner's assertion that Ms. Perrine was providing him with Ativan.  The jury heard several times that Mr. Cook had asserted that he had been provided Ativan by the victim.  *See, e.g.* [Doc. 29-25 at 165].  This was a contested issue at trial, and during opening statements petitioner's trial counsel asserted the theory that petitioner had taken Ativan provided to him by Ms. Perrine.  [Doc. 29-21 at 43].  However, it is unclear what witness could have provided non-hearsay testimony on this fact.  Thus, petitioner cannot show that his trial counsel's performance amounted to incompetence under prevailing professional norms.  Second, the jury was presented with evidence that Ativan was found in Ms. Perrine's purse, and petitioner is unable to show how additional testimony that she provided the Ativan could have changed the outcome.

Turning to petitioner's second ground, he argues that "Counsel did not adequately present the fact that Petitioner's 'bipolar' disorder was service connected.  In fact, it was later discovered that Petitioner had been suffering from service-connected PTSD since the time of his 'bipolar' diagnosis – a period of time which extends to well-before the Petitioner even *met* the decedent."  [Doc. 1-1 at 4].  First, to the extent petitioner seeks to

advance a theory based on the failure to present evidence of PTSD, it is undisputed that this diagnosis occurred long after trial, and clearly it was not ineffective of his trial counsel to fail to present evidence of a future diagnosis.  Second, the undersigned notes that evidence of petitioner's bipolar disorder, its connection to his military service, and its affect on his ability to premeditate, deliberate, or form malice was presented to the jury.  As summarized by the Supreme Court of Appeals of West Virginia:

> Petitioner's presentation of evidence included testimony from psychologist Dr. Bernard Lewis, who testified that petitioner "was in an altered state of mind such that he was unable to control his thoughts, his feelings and his behaviors, and that is what directly resulted in his actions at that time[.]" He further testified that petitioner suffered from bipolar disorder at the time petitioner shot Ms. Perrine and was still bipolar at the time of the trial. While Dr. Lewis denied finding any support for a diagnosis of post-traumatic stress disorder ("PTSD"), he acknowledged that petitioner "served in Bosnia" and set forth some of the things petitioner experienced during that service. In addition to addressing a report from Dr. Clayman, an expert for the State, and medical records from the Veteran's Administration ("VA"), Dr. Lewis testified that petitioner's diminished capacity made him unable to premeditate, deliberate, or form malice when he shot Ms. Perrine on July 15, 2011.

*Cook v. Pszczolkowski*, No. 20-0802, 2022 WL 972259, at *1 (W.Va. Mar. 31, 2022). The petition provides no additional information on what petitioner believes "adequate" presentation of the above evidence would entail.  The undersigned finds that petitioner is unable to meet either prong of *Strickland*.  First, it appears that petitioner's trial counsel presented evidence of his bipolar disorder and his service in Bosnia, albeit in the guilt phase of trial; petitioner's unsupported assertion that this presentation was inadequate is not enough to show that counsel's performance "amounted to incompetence under prevailing professional norms."  Second, even if petitioner could meet the first prong, petitioner has not shown he was prejudiced.  The jury heard the evidence related to petitioner's bipolar disorder and how it affected his ability to premeditate, deliberate, or

16

form malice; petitioner has failed to allege how the outcome of the case would have been different had counsel "adequately" presented the fact that the bipolar disorder was connected to his military service.

Turning to the third alleged failure, petitioner contends that trial counsel effectively abandoned him during the mercy phase of his trial by not calling any character witnesses. [Doc. 1-1 at 4].   Petitioner contends that this was "a result of their inadequate investigation."  [Id.].  In his response to the motion to dismiss or for summary judgment, petitioner argues that although there was testimony that petitioner's family was too upset to testify, "Counsel could not have known this, however, because Counsel never went and talked to Petitioner's family at any point during the trial, much less before the trial." [Doc. 32 at 4].

In reviewing this claim, the Supreme Court of Appeals of West Virginia noted that during petitioner's habeas case, trial counsel determined not to call petitioner as a witness based on a concern that he would express anger rather than remorse.   ***Cook v. Pszczolkowski***, No. 20-0802, 2022 WL 972259, at *6 (W.Va. Mar. 31, 2022).  One of his attorneys further testified "that calling witnesses during the mercy phase would highlight to jurors that petitioner did not testify or express remorse to the jury." ***Id***.  Counsel thus adopted a strategy of presenting no witnesses and arguing that the State should therefore be precluded from presenting witnesses in the mercy phase; the Court found that although this strategy failed, that did not make it ineffective. ***Id***.  Likewise, the Court found that "Due to the overwhelming strength of the evidence presented against petitioner during the guilt phase, it is not reasonably probable that the result would have been different if counsel had called witnesses during the mercy phase." ***Id***.  Thus, petitioner

was unable to meet either prong of *Strickland*.  In his response to the pending Motion, petitioner now argues that the strategy could not have been a strategic one because counsel failed to investigate potential mitigation witnesses.  However, even assuming, *arguendo*, that petitioner could show that trial counsel's representation in this matter fell below an objective standard of reasonableness, the West Virginia Supreme Court found that he was also unable to meet the prejudice prong of *Strickland* by showing that the outcome of the case would have been different if counsel had called witnesses during the mercy phase of trial.  The undersigned agrees and finds that, at a minimum, fairminded jurists could disagree about the state court's decision.

Thus, with respect to all three grounds, petitioner has failed to show that the state court's application of *Strickland* was unreasonable, and Ground Four of the petition should be denied.

### C. Petitioner's Fifth Ground, that his sentence was constitutionally disproportionate, is not exhausted.

Petitioner's final claim is that his sentence is constitutionally disproportionate based on the newly discovered evidence "that his psychiatric manifestation was secondary to an improper diagnosis of bipolar disorder.  Petitioner was actually suffering from PTSD since *well* before he met the decedent . . .."  [Doc. 1-1 at 7].  Petitioner contends that based on this newly discovered evidence he is entitled to a new mercy phase of trial.  [Id.].  It is undisputed that petitioner has not presented this claim to the Supreme Court of Appeals of West Virginia.  *See* [Doc. 30 at 20–21; Doc. 32 at 5].  Respondent argues that this claim is procedurally defaulted.  [Doc. 30 at 20–25]].

Under the doctrine of procedural default: "If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts

can treat the claims as if they were procedurally defaulted in the state courts." ***Clagett v. Angelone***, 209 F.3d 370, 378 (4th Cir. 2000). "Simply put, as a general matter, 'a federal court may not consider claims that a petitioner failed to raise at the time and in the manner required under state law.'" ***Braynen v. Martin***, No. 5:17-CV-151, 2019 WL 3801855, at *8 (N.D. W.Va. June 6, 2019) (Trumble, M.J.), *report and recommendation adopted*, No. 5:17-CV-151, 2019 WL 3781433 (N.D. W.Va. Aug. 12, 2019) (Stamp, J.) (quoting ***Teleguz v. Zook***, 806 F.3d 803, 807 (4th Cir. 2015)). Federal courts cannot hear a procedurally defaulted "unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." ***Bostick v. Stevenson***, 589 F.3d 160, 164 (4th Cir. 2009).

Here, petitioner argues that he has presented cause for failing to present this claim because the factual basis for his service-connected PTSD was not reasonably available to counsel. [Doc. 32 at 5]. As respondent points out, this is contradicted by the record in this case. Although petitioner argues that the basis was not available at the time his amended petition was filed in his state habeas case, respondent points out that petitioner filed a supplement to the amended petition. [Doc. 29-10]. That supplement provided evidence that petitioner suffered from PTSD and argued that this information could have changed the jury's ruling on either guilt or mercy. [Id.]. On appeal, petitioner argued that the circuit court erred by not providing either a new guilt phase or a new mercy phase of trial based on his PTSD diagnosis. [Doc. 29-14]. However, petitioner did not raise the argument presented here, that the sentence was constitutionally disproportionate. Evidence of his PTSD was clearly presented to both the circuit court and the Supreme

Court of Appeals of West Virginia, and, as such, petitioner cannot show that this evidence was unavailable for purposes of his disproportionality argument.

Accordingly, the undersigned finds that this claim is unexhausted, that any procedural default is not excused, and that this claim should therefore be dismissed.

## V.    RECOMMENDATION

For the reasons stated above, the undersigned recommends that Respondent's Motion to Dismiss and for Summary Judgment [**Doc. 29**] be **GRANTED** and that the petition [**Doc. 1**] be **DENIED** and **DISMISSED** with prejudice as to Grounds One, Two, Three, and Four, and without prejudice as to Ground Five, preserving petitioner's right to renew the same following proper exhaustion of state remedies.

Within fourteen (14) days after being served with a copy of this report and recommendation, the petitioner may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**.  A copy of any objections shall also be submitted to the United States District Judge.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.   In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: August 31, 2023.

*/s. James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE